1
2
3
4
5
6
7

Daniel L. Keller (SBN 191738)
Dan C. Bolton (SBN 104236)
**KELLER, FISHBACK & JACKSON LLP**
28720 Canwood Street, Suite 200
Agoura Hills, CA 91301
Telephone: 818.342.7442
Facsimile: 818.342.7616
Email: dkeller@kfjlegal.com
Email: dbolton@kfjlegal.com

8
9
10
11
12
13
14

Stephen J. Fearon, Jr. (admitted *pro hac vice*)
Paul V. Sweeny (admitted *pro hac vice*)
**Squitieri & Fearon, LLP**
32 E. 57th St., 12th Floor
New York, NY 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

15

Attorneys for Plaintiff and the Proposed Class

16

**UNITED STATES DISTRICT COURT**

17

**CENTRAL DISTRICT OF CALIFORNIA**

18
19
20
21
22

OULA ZAKARIA, individually and as
a representative of the class,

            Plaintiff,

        vs.

23
24
25
26
27
28

GERBER PRODUCTS CO., a
corporation, d/b/a NESTLE
NUTRITION, NESTLE INFANT
NUTRITION, AND NESTLE
NUTRITION NORTH AMERICA,

            Defendant.

Case No.  2:15-cv-0200-JAK (Ex)

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

Date:   June 15, 2015
Time:  8:30 a.m.
Courtroom:  750

## Table of Contents

I.     INTRODUCTION .................................................................................1

II.    FACTUAL ALLEGATIONS .................................................................1

III.   STANDARD OF REVIEW ..................................................................4

IV.   LEGAL ARGUMENT .........................................................................5

    A.    The Primary Jurisdiction Doctrine Has No Application in a Consumer Class Action Based on Deceptive and Misleading Marketing .................................................................................5

    B.    The Amended Complaint Alleges That Gerber's Representations About Allergy, Atopic Dermatitis, and FDA Endorsement Are Actually False and Misleading, Rather Than Merely Unsubstantiated .........................................................................8

    C.    The Amended Complaint Meets the Particularity Requirements of Fed. R. Civ. P. 9(b) ...........................................................11

    D.    The Amended Complaint Adequately Alleges Claims under the UCL, FAL, and CLRA .....................................................12

        1.    Plaintiff Challenges Gerber's Affirmative Misrepresentations, Not Gerber's Failure to Disclose or Concealment of Information from Consumers ......................12

        2.    Plaintiff Alleges Reliance and Causation Under the UCL, FAL and CLRA ...........................................13

        3.    Plaintiff Alleges Damages and "Injury in Fact" under the UCL, FAL and CLRA .....................................16

    E.    Plaintiff Has Properly Alleged a Breach of Express Warranty Claim. ...................................................................18

    F.    Plaintiff Has Properly Alleged a Breach of Implied Warranty Claim ......................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      G.     Plaintiff Has Properly Alleged Claims for Negligent and
           Intentional Misrepresentation ............................................................23

V.     CONCLUSION ...............................................................................25

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

Cases

*All West Electronics, Inc. v. M-B-W, Inc.,*
  64 Cal. App. 4th 717 (1998) ...................................................................23

*Allen v. ConAgra Food, Inc.,*
  13-cv-1279, 2013 WL 4737421 (N.D. Cal. Sept. 23, 2013) ....................24

*Augustine v. Natrol Products, Inc.,*
  13-cv-3219, 2014 WL 2506284 (S.D. Cal. May 15, 2014).......................21

*Barrier Specialty Roofing & Coatings, Inc. v. ICI Paint North America, Inc.,*
  07-cv-1614, 2008 WL 2724876 (E.D. Cal. July 11, 2008) ......................24

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................................4

*Blanco v. Baxter Healthcare Corp.,*
  158 Cal. App. 4th 1039 (2008) .................................................................23

*Bly-Magee v. California,*
  236 F.3d 1014 (9th Cir. 2001) ..................................................................11

*Bruton v. Gerber Products Company,*
  961 F. Supp. 2d 1062 (N.D. Cal. 2013)........................................5, 14, 17

*Cardenas v. NBTY, Inc.,*
  870 F. Supp. 2d 984 (E.D. Cal. 2012) ......................................................10

*Chacanaca v. Quaker Oats Co.,*
  752 F. Supp. 2d 1111 (N.D. Cal. 2010).......................................................6

*Chavez v. Blue Sky Natural Beverage Co.,*
  268 F.R.D. 365 (N.D. Cal. 2010)................................................................7

*Chavez v. Nestle USA, Inc.,*
  511 Fed. Appx. 607 (9th Cir. 2013) ......................................................8, 12

*Clark v. Time Warner Cable,*

523 F.3d 1110 (9th Cir. 2008) ...................................................5

*Cortina v. Goya Foods, Inc.*,
14-cv-169, 2015 WL 1411336 (S.D. Cal. Mar. 19, 2015) ........................23

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
522 F.3d 925 (9th Cir. 2008) .................................................18

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) .................................................5

*Delacruz v. Cytosports*,
No. 11-3532, 2012 WL 256387 (N.D. Cal June 28, 2012) ........................15

*Delarosa v. Boiron, Inc.*,
275 F.R.D. 582 (C.D. Cal. 2011)................................................14

*Eckler v. Wal-Mart Stores, Inc.*,
No.: 12-cv-727, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) .....................9

*Gordon v. Church & Dwight Co.*,
09-cv-5585, 2010 WL 1341184 (N.D.Cal. April 2, 2010)..........................8

*Gottsdanker v. Cutter* Laboratories,
182 Cal. App. 2d 602 (1960) .................................................22

*Hauter v. Zogarts*,
14 Cal.3d 104 (1975) ........................................................21

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013.) ..............................................18

*Hughes v. Ester C. Co.*,
930 F. Supp. 2d 439 (E.D.N.Y. 2013) ..........................................9

*In re 5-hour ENERGY Marketing and Sales Practices Litigation*
13-2438, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014)............................7

*In re ConAgra Foods, Inc.*,
-- F. Supp. 3d --, 2015 WL 102756 (C.D. Cal. Feb. 23, 2015) .................20

*In Re Ferrero Litigation*,

794 F. Supp. 2d 1007 (S.D. Cal 2011) ............................................................21

*In re Gerber Probiotic Sales Practice Litigation*,
   12-cv-00835, 2014 WL 1310038 (D.N.J. Mar. 31, 2014)........................11

*In re Gerber Probiotics Sales Practices Litigation*,
   12-cv-00835, 2013 WL 4517994 (D.N.J. Aug. 23, 2013)..........................9

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (Cal. 2009) ............................................................14

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ..............................................14

In *Weinstat v. Dentsply Intern., Inc.*,
   180 Cal. App. 4th 1213 (Cal. Ct. App. 2010)........................................20

*Jones v. ConAgra Foods, Inc.*
   912 F. Supp.2d 901 (N.D. Cal. 2012) .................................................17

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .........................................................11

*Klein v. Duchess Sandwich Co.*,
   14 Cal. 2d 272 (1939) ...................................................................22

*Kwikset Corp. v. The Superior Court*,
   51 Cal. 4th 310 (Cal. 2011) ............................................................17

*Lam v. General Mills*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012)...............................................12

*Lockwood v. ConAgra Foods, Inc.*,
   597 F. Supp. 2d 1028 (N.D. Cal 2009).................................................6

*McKinniss v. General Mills, Inc.*,
   07-cv-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)......................18

*Mendiondo v. Centinela Hosp. Medical Center*,
   521 F.3d 1097 (9th Cir. 2008) ...........................................................5

*Mexicali Rose v. Superior Court*,

1 Cal. 4th 617 (1992) ........................................................................................22

*Migliori v. Boeing North America, Inc.*,
   97 F. Supp. 2d 1001 (C.D. Cal. 2000) ...............................................................9

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ............................................................................11

*Mutual Pharm. Co. v. Watson Pharm., Inc.*,
   09-5700, 2009 WL 3401117 (C.D. Cal. Oct. 19, 2009) ......................................7

*Mutual Pharm. Co. v. Watson Pharm., Inc.*,
   09-cv-5421 (D. N.J. Feb. 8, 2010) ...................................................................7, 8

*National Communications Assn., Inc. v. AT&T*,
   46 F.3d 220 (2nd Cir. 1995) ...............................................................................5

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) ...............................................................25

*Reid v. Johnson & Johnson*,
   780 F. 3d 952 (9th Cir. 2015) ..........................................................................7

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ......................................................................14

*Rikos v. Procter & Gamble Co.*,
   782 F. Supp. 2d 522 (S.D. Ohio 2011) ...............................................................9

*Stanwood v. Mary Kay, Inc.*,
   941 F. Supp. 2d 1212 (C.D. Cal. 2012) .............................................................17

*Williams v. Gerber Products, Co.*,
   552 F.3d 934 (9th Cir. 2008). .....................................................................12, 15

*Williamson v. Reinalt-Thomas Corp.*,
   11-cv-03548, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ............................25

*Wilson v. Frito-Lay North America, Inc.*,
   12-1586, 2013 WL 1320468 (N.D. Cal. April 1, 2013) ....................................16

*Windham at Carmel Mountain Beach Assn. v. Superior Court*,
   109 Cal. App. 4th 1162 (2003) ................................................................................23

*Yumul v. Smart Balance, Inc.*
   773 F. Supp. 2d 1117 (C.D. Cal. 2010) ..................................................................16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I.    <u>INTRODUCTION</u>

This class action arises from a fraudulent and deceptive marketing scheme by defendant Gerber Products Company ("Gerber") to dupe concerned parents into purchasing an infant formula that Gerber falsely claimed reduced allergies in newborns despite a body of scientific evidence to the contrary.  Gerber's motion to dismiss  misconstrues, ignores and distorts much of the Amended Complaint, and overlooks well-settled rules and precedent relating to these claims.  Courts have rejected the same arguments that Gerber makes here. The motion even includes a canned argument that Plaintiff is not entitled to injunctive relief, though the Amended Complaint seeks no such relief.  The Court should deny the motion.

## II.    <u>FACTUAL ALLEGATIONS</u>

Gerber manufactures, markets, and sells infant food and other infant-related products in California and throughout the country. Amended Complaint at ¶¶ 14, 16, 17, 19.[1] One of those products is Good Start Gentle, an infant formula made from partially hydrolyzed whey protein. ¶¶ 14, 19, 20. In a calculated effort to set Good Start Gentle apart from competitor infant formulas and substantially increase its revenues, Gerber falsely advertised Good Start Gentle as the first and only infant formula endorsed by the FDA to reduce the occurrence of allergies in infants. ¶¶ 3, 7 25-27, 30-33, 36-51, 55-56.

However, scientific evidence proves that ingesting partially hydrolyzed whey protein does not reduce the risk of infants of developing allergies. ¶¶ 26, 36-42, 44, 46, 47. In 2006, after reviewing thirty-six studies, the Food and Drug Administration ("FDA") concluded that there was "no credible evidence to support the qualified health claim relating consumption of 100 percent partially hydrolyzed whey protein . . . to a reduced risk of food allergy." ¶ 26. Other scientific research proves that ingesting partially hydrolyzed whey protein does not reduce the risk of manifestations of allergic disease in children from birth to age seven, nor does it

---

[1] Citations to paragraphs in the Amended Complaint are referred to as  "¶__".

"support the recommendation that [partially hydrolyzed whey formula] . . . be used after breast-feeding as a preventative strategy for infants at high risk of allergic diseases." ¶¶ 36-41 (citing Exhibit A, the "Lowe Study"). Gerber knew partially hydrolyzed whey protein did not prevent allergies because Gerber's affiliate funded (and later defunded) the Lowe Study, and its Director of Regulatory Issues, Melanie Fairchild-Dzanis, received an FDA letter stating that no evidence existed supporting Gerber's claim about the product preventing allergies. ¶¶ 28, 41.

Even though it possessed this knowledge, beginning in 2011 Gerber widely marketed Good Start Gentle as a means to prevent developing all allergies in infants. ¶¶ 7, 44, 46, 47. For instance, it attached golden labels to Good Start Gentle containers that stated, in bold lettering, that the product was the "1st and Only Routine Formula to Reduce the Risk of Developing Allergies," and it disseminated print and television advertisements representing that Good Start Gentle prevented infants from inheriting their mother's allergies. ¶ 44, 46, 47.

Gerber also deceptively advertised that partially hydrolyzed whey protein "helps reduce the risk of developing atopic dermatitis," a common skin disease known as eczema. ¶¶ 3, 45, 48, 50. And it did so when scientific research funded by Gerber's affiliate proved this assertion to be false. ¶¶ 36-41 (After testing 575 infants up to the age of two in a single-blind study, the Lowe Study confirmed that "Neither [partially hydrolyzed whey protein] formula nor the soy formula reduced the risk of allergic manifestations in the first 2 years of life."). Moreover, when Gerber referred to atopic dermatitis in its marketing campaign for Good Start Gentle, it failed to include the stringent qualifying language the FDA required concerning the dearth of science supporting Gerber's health claim.[2] ¶¶ 30-35, 45, 50 (The 2011

---

[2] It is important to note that the FDA did not review the Lowe Study when issuing its Letter of Enforcement Discretion to Defendant in May 2011. ¶¶ 30, 31, 35 (The Lowe study was published in June 2011, one month after the FDA issued its letter on May 24, 2011). It is thus unclear if the FDA would have exercised enforcement discretion regarding any atopic dermatitis claim, no matter how narrow, if the Lowe Study were included in its analysis.

1   Enforcement Discretion Letter required language stating that "little" or "very little"

2   evidence supported the claim depending on the infant age.").

3       Gerber falsely advertised that the FDA endorsed Good Start Gentle as a

4   means to prevent allergies generally and atopic dermatitis in particular when, in

5   reality, the FDA only stated that Gerber could make a very narrow set of health

6   claims relating to atopic dermatitis provided Gerber also include strict qualifying

7   statements. ¶¶ 3, 6, 25-28, 30-34, 45, 48, 49.

8       Gerber misleadingly used the FDA term of art "Qualified Health Claim" to

9   misrepresent that Good Start Gentle was fit for a particular purpose or job, when, in

10  actuality, the term "Qualified Health Claim" means that the FDA did not grant

11  approval for use of an unqualified health claim and that the scientific support for the

12  claim is limited or lacking. ¶¶ 3, 45, 48. 49. Gerber misleadingly used the "Qualified

13  Health Claim" to increase sales by grossly mischaracterizing the nature of the FDA

14  health claim approval process and the quality and the traits possessed by Good Start

15  Gentle. ¶¶ 3, 7, 45, 48, 49, 50, 92, 110.

16      The Amended Complaint details Gerber's false representations and alleges

17  that Gerber began its misleading advertising campaign in at least 2011 and continues

18  to do so today. ¶¶ 7, 42-51, 53-58. The Amended Complaint points to the "1st and

19  Only Label" being placed on containers as late as November 2013, and specifically

20  identifies the dates of other misleading marketing materials as well. ¶¶ 63, 46

21  (storyboard of television advertisement dated April 9, 2012 stating that Good Start

22  Gentle prevented infants from inheriting their mother's allergies); ¶ 50 (People

23  Magazine advertisement stating "1st Formula With FDA Qualified Health Claim" in

24  prominent seal dated August 15, 2013).

25      Gerber widely disseminated Good Start Gentle's false advertising and

26  promotional materials across the United States, including in California, through

27  television commercials, nationwide print advertisements, point-of-sale displays,

28  product packaging, and on the internet. ¶¶ 14, 16, 19, 42-50, 61-65.

- 3 -

The Amended Complaint provides seven examples of promotional materials that were materially misleading. ¶¶ 42-52. Some falsely communicate that Good Start Gentle prevented infants from developing all allergies – a claim soundly rejected by scientific research – while others communicate that Good Start Gentle prevented atopic dermatitis – a claim also disproven by scientific research. ¶¶ 36-41, 44-48. Furthermore, Gerber repeatedly stated that the FDA endorsed or "qualified" Good Start Gentle for a particular purpose or quality, when, in reality, the FDA did no such thing. ¶¶ 3, 7, 45, 48, 49, 50, 92. Gerber made these misrepresentations to induce Plaintiff and other members of the consuming public to purchase Good Start Gentle. ¶¶ 7, 42, 52, 62-63, 89, 101, 111.

In October 2013, a pediatrician introduced Plaintiff to Good Start Gentle. ¶ 60. Plaintiff then conducted her own internet research and relied upon Gerber's misrepresentations that Good Start Gentle prevented allergies in infants and that the FDA endorsed or "qualified" the product for this attribute. ¶ 61. This understanding was further reinforced by the "1st & Only Routine Formula to Reduce the Risk of Developing Allergies" label, a representation Plaintiff relied upon to purchase Good Start Gentle in November 2013. ¶¶ 62-63. Plaintiff regularly purchased Good Start Gentle based on Gerber's false claims from October 2013 until November 2014. ¶¶ 65-67. If Plaintiff had not been exposed to Gerber's misrepresentations, she would have purchased cheaper competitor infant formula, paid less than what she did for overpriced Good Start Gentle, or she would not have purchased the product at all. ¶¶ 68, 69, 91, 102.

## III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss should be denied where a complaint states a claim for relief "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the Court "must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d

1152, 1159 (9th Cir. 2012) "Dismissal under 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008). Here, Plaintiff plausibly alleges all her claims for relief, and as result, the Court should deny Gerber's Motion to Dismiss.[3]

## IV.  LEGAL ARGUMENT

## A.  THE PRIMARY JURISDICTION DOCTRINE HAS NO APPLICATION IN A CONSUMER CLASS ACTION BASED ON DECEPTIVE AND MISLEADING MARKETING

Courts have emphasized that primary jurisdiction "applies in a limited set of circumstances" and "is not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "Instead, it is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Id.* at 1114; *National Communications Assn., Inc. v. AT&T*, 46 F.3d 220, 222-223 (2nd Cir. 1995) ("The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight.")

Courts have consistently rejected the same arguments that Gerber makes here about primary jurisdiction and have refused to invoke primary jurisdiction in consumer class actions alleging deceptive and misleading marketing. For instance, in *Bruton v. Gerber Products Company*, 961 F. Supp. 2d 1062 (N.D. Cal. 2013), the

---

[3]If the Court dismisses any portion of the Amended Complaint, Plaintiff requests leave to amend. *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (leave to amend is only properly denied "where the amendment would be futile").

plaintiff brought an action under the UCL, FAL and CLRA alleging that several of Gerber's products contained deceptive and misleading labels relating to nutrient and sugar content, as well as by representing that the products were "made with 100% natural ingredients." *Id.* at 1071-73. As it does here, Gerber argued that the primary jurisdiction doctrine should bar plaintiff's suit. The Court disagreed:

> Defendants urge that, in this case, the "FDA has 'regulatory authority pursuant to a statute that subjects an industry to comprehensive regulatory authority,' and resolving the issue 'requires expertise or uniformity in administration.' The Court is not persuaded. While this case does involve issues within the jurisdiction of the FDA, *the Ninth Circuit has made clear that only those claims raising issues of first impression or particular complexity are appropriately dismissed or stayed based on primary jurisdiction.*

*Id.* at 1085, emphasis added; *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal 2009) (the primary jurisdiction doctrine "is a 'prudential one,' under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry . . . ").

Similarly, in *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010), plaintiffs filed a consumer class action under the UCL, FAL, and CLRA alleging that defendant's granola bars contained misleading representations regarding the amount of trans fat. Defendant asked the Court to apply the primary jurisdiction doctrine. The Court declined, reasoning that "plaintiffs advance a relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer" and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that the issues raised in the case "do not entail technical questions or require agency expertise." *Id.* at 1124; *Reid v. Johnson & Johnson*, 780 F. 3d 952, 967 (9th Cir. 2015) (rejecting primary jurisdiction argument and stating that the "the case ultimately turns on . . . whether a reasonable consumer would be misled by [Defendant's] marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 374-375 (N.D. Cal. 2010) (primary jurisdiction doctrine did not apply to a deceptive labeling claim since "plaintiff's state law claims do not require an FDA ruling as to whether the [Food, Drug, and Cosmetic Act] ha[s] been violated, nor does adjudication of those claims require the FDA's particular expertise or uniformity in administration of labeling requirements."); *In re 5-hour ENERGY Marketing and Sales Practices Litigation* 13-2438 (Dkt. 51), 2014 WL 5311272, at *15 (C.D. Cal. Sept. 4, 2014) ("Plaintiff's allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading . . . . [T]he mere existence of an agency investigation does not weigh in favor of a referral under the primary jurisdiction doctrine.") (internal quotation marks omitted).

Ignoring the overwhelming authority against it, Gerber relies on two cases that are both distinguishable. Def. Memo. at 12-13. In the first, *Mutual Pharm. Co. v. Watson Pharm., Inc.*, 09-5700 (Dkt. 139), 2009 WL 3401117 (C.D. Cal. Oct. 19, 2009), the plaintiffs sought a preliminary injunction against a rival drug company alleging that it infringed on a "three-year exclusivity period granted by the FDA." *Id.* at *1. The Court did not decide whether or not the doctrine of primary jurisdiction applied but instead denied a preliminary injunction because "Plaintiffs [had] not established a likelihood of success on the merits." *Id.* at *4, 9 (also transferring the case). After the case was transferred, the District of New Jersey denied defendants' motion to dismiss and rejected their primary jurisdiction

argument. *Mutual Pharm. Co. v. Watson Pharm., Inc.*, 09-cv-5421 (Dkt. 209), at 3 (D.N.J. Feb. 8, 2010). Here, like the court in *Mutual Pharm. Co.*, this Court should reject Gerber's primary jurisdiction argument.

The other case, *Gordon v. Church & Dwight Co.*, 09-cv-5585 (Dkt. 40), 2010 WL 1341184 (N.D.Cal. April 2, 2010), involved the complex issue of labeling medical devices (condoms) treated with Nonoxynol-9 ("N9"), a spermicidal lubricant. *Id.* at *1. The FDA had, up to that point, specifically regulated N9 condoms for thirty years, "mandating the specific substance of warnings, instructions, and statements of use." *Id.* at 2. When the court was deciding *Gordon*, the FDA was also actively "considering public comments and other data in connection" with the labeling of N9 condoms. *Id. Gordon* thus presents a striking factual contrast to Plaintiff's case, where the FDA has little, if any, current involvement in regulating Gerber's conduct. *Chavez v. Nestle USA, Inc.*, 511 Fed. Appx. 607, 607 (9th Cir. 2013) ("Appellants' claims do not necessarily implicate primary jurisdiction, and the FDA has shown virtually no interest in regulating DHA in this context.").

The two cases cited by Gerber do not change the fact that courts have previously rejected the same arguments that Gerber makes here. The primary jurisdiction doctrine does not apply to these claims or to the underlying facts.

## B.   THE AMENDED COMPLAINT ALLEGES THAT GERBER'S REPRESENTATIONS ABOUT ALLERGY, ATOPIC DERMATITIS, AND FDA ENDORSEMENT ARE ACTUALLY FALSE AND MISLEADING, RATHER THAN MERELY UNSUBSTANTIATED

Gerber attempts to classify Plaintiff's allegations as premised on a non-actionable "prior substantiation theory of liability." Def. Memo. at 13: 16. Gerber attempted the same "lack of substantiation" argument in another case and failed because the court found that plaintiffs sufficiently alleged Gerber's representations

were "affirmatively false" by citing scientific research in their complaint. *In re Gerber Probiotics Sales Practices Litigation*, 12-cv-00835 (Dkt. 61), 2013 WL 4517994, at *8 (D.N.J. Aug. 23, 2013).

Like the plaintiffs in *Gerber Probiotics,* Plaintiff pleads actual falsity because she alleges that scientific research disproves Gerber's claims about Good Start Gentle preventing allergies and atopic dermatitis.  ¶¶ 26, 36-41. When assessing misrepresentations, "[t]here is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are 'unsubstantiated,' but the case law (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former." *Eckler v. Wal-Mart Stores, Inc.*, No.: 12-cv-727 (Dkt. 24), 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012); *Hughes v. Ester C. Co.*, 930 F. Supp. 2d 439, 459-60 (E.D.N.Y. 2013) (cited study moved the plaintiff's claims into the "affirmative misrepresentation realm."); *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 527-29 (S.D. Ohio 2011) (same).

In the cases Gerber cites, the plaintiffs did not allege that scientific research disproved the representations at issue. *See* Def. Memo. of Law at 13-14. Here, on the other hand, Plaintiff alleges that the comprehensive Lowe Study[4] (attached and incorporated into the Amended Complaint) contradicts Gerber's bogus allergy and atopic dermatitis claims. *See* Am. Compl. at ¶¶ 36-41. As the second largest study of its kind directly considering the link between infant allergies and ingesting partially

---

[4] Plaintiff should not be charged with constructive knowledge of the Lowe Study, as argued, without authority, by Gerber. Def. Memo. at 17. A court may impute knowledge to a party where publicity and information relating to an issue are generally available, but it must take into account a number of factors including the characteristics of the party, and quantity and quality of the information. *Migliori v. Boeing North America, Inc.*, 97 F. Supp. 2d 1001, 1011. Generally speaking, a court should not undertake such an analysis on a motion to dismiss. *Id.* at 1011-12. Here, there are absolutely no facts alleged in the Amended Complaint which create an inference that the Lowe Study was widely publicized or that Plaintiff should have been aware of it based on unique circumstances.

hydrolyzed whey protein, the Lowe Study concluded that partially hydrolyzed whey protein offered no prophylactic benefit for preventing infant allergies. *Id.* On this Motion to Dismiss, Plaintiff's allegations about the Lowe Study and other scientific research successfully raise the inference that Gerber's health claims are actually false, not just unsubstantiated. *See Gerber Probiotic*, 2013 WL 4517994, at *8 ("[I]t is not appropriate to consider the content of the studies and resolve the factual issues at this stage of the litigation. Indeed, in arguing that other courts have rejected similar claims, Defendant relies on two cases that involved motions for summary judgment [including *Stanley v. Bayer Healthcare LLC*, cited in Def. Memo. of Law at 14: 9-10].")

Science aside, Gerber's FDA approval claims and its misleading use of the FDA term of art "Qualified Health Claim" (including placing the term prominently in seals and gold badges, ¶¶ 45, 49, 50) are misrepresentations of facts and circumstances. The FDA unequivocally denied Gerber's general allergy prevention claim in 2006 and additionally rejected Gerber's atopic dermatitis claim as proposed in 2011, instead requiring that Gerber drastically modify the claim and provide strict qualifying language. ¶¶ 21-35, 55-58. Despite these clear rejections and in disregard of the FDA's authority, Gerber advertised that the FDA endorsed Good Start Gentle, Gerber did not include any qualifying language with its atopic dermatitis claims, and Gerber misrepresented the FDA health claim process through the misleading use of the word "qualified." *Id.* at 42-52. These practices, along with Gerber's false allergy claims, constitute misleading and false advertising. As a result, the Amended Complaint should not be dismissed for pleading a mere "lack of substantiation," as Gerber contends. *See Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 995 (E.D. Cal. 2012) ("Plaintiff's cause and effect studies are sufficiently specific to provide Defendants notice of what is allegedly false or misleading about the Osteo Bi-Flex representations[.]").

///

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1
2

## C.   THE AMENDED COMPLAINT MEETS THE PARTICULARITY REQUIREMENTS OF FED. R. CIV. P. 9(B)

3
4
5
6
7
8
9
10
11
12

Under Rule 9(b), "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). State of mind may be alleged generally. FED. R. CIV. P. 9(b). Moreover, in certain scenarios, including instances of corporate fraud, "the rule may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). In sum, a plaintiff must plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

13
14
15
16
17
18
19
20
21

In *Gerber Probiotics*, where plaintiffs challenged representations that Gerber's products supported the digestive health of infants, the District of New Jersey found that plaintiffs pled with particularity because they "set forth the dates within which Gerber ran the advertising campaign at issue, identifie[d] the specific statements concerning the immune benefits of probiotics at issue in the campaign, attache[d] representative examples of the advertisements and labels, and state[d] the date range within which and location where these Plaintiffs purchased the products." *In re Gerber Probiotic Sales Practice Litigation*, 12-cv-00835 (Dkt. 79), 2014 WL 1310038, at *8 (D.N.J. Mar. 31, 2014).

22
23
24
25
26
27
28

Here, as in *Gerber Probiotic*, Plaintiff alleges "the who, what, when, where, and how" of Gerber's misconduct. She alleges what Gerber stated, when and where it made those statements, and provides examples of Gerber's false marketing materials, describing in detail how each sample was misleading based on scientific research, notions common to the consuming public, and Gerber's course of dealings with the FDA. ¶¶ 42-52. She also describes the dates and locations of her purchases. ¶¶ 60-69. Therefore, as a whole, the Amended Complaint provides Defendant with

1   enough factual detail to defend against the claims as required by Rule 9(b).

2   **D.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES CLAIMS**

3   **UNDER THE UCL, FAL, AND CLRA**

4   **1.    Plaintiff Challenges Gerber's Affirmative Misrepresentations, Not**

5   **Gerber's Failure to Disclose or Concealment of Information from Consumers**

6         In order to allege a UCL, FAL, or CLRA claim, a plaintiff does not need to

7   allege a duty to disclose as argued by Gerber. Def. Memo. at 20-21. Instead, claims

8   under the UCL, FAL, and CLRA are governed by the "reasonable consumer"

9   standard." *Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

10  Under this test, Plaintiff must allege "members of the public are likely to be

11  deceived" by Gerber's business practices. *Id.* False statements can deceive the

12  public, along with ostensibly true statements that have a "capacity, likelihood or

13  tendency to deceive or confuse." *Id*; *Lam v. General Mills*, 859 F. Supp. 2d 1097,

14  1104 (N.D. Cal. 2012) ("A reasonable consumer might make certain assumptions

15  about the type and quantity of fruit in the Fruit Snacks based on the statement "made

16  with real fruit," along with other statements prominently featured on the products'

17  packaging."). Plaintiff satisfies these pleading requirements. ¶¶ 92, 100, 101, 106,

18  108, 110, 112 ("[Gerber's] misuse of FDA endorsement and FDA terms of art

19  were/are likely to deceive reasonable consumers.")

20        Gerber appears to draw its "duty to disclose" argument and supporting

21  authority directly from *Chavez v. Nestle USA, Inc.*, No. 11-2011 WL 2150128 (Dkt.

22  89), at *5-7 (C.D. Cal. May 19, 2011), a case inapposite to Plaintiff's claims, and

23  one later reversed, in part, by the Ninth Circuit.[5] In *Chavez*, the plaintiffs expressly

24  based their theory of liability on "two interrelated components: (1) the general

25  allegation of Defendant's failure to have substantiation . . . and (2) the existence of a

26  'duty to disclose' on the part of Nestle that it had no substantiation." *Id.* at *4. This

27  _____

28  [5] The Ninth Circuit held that "[t]he primary jurisdiction doctrine did not provide an alternative
    basis for dismissing Juicy Juice Brain Development claims." *Chavez v. Nestle, USA, Inc.*, 511 Fex.
    Appx. 606, 606-08 (9th Cir. 2013).

1  Court held that the plaintiffs failed to argue or allege the existence of a duty to

2  disclose or that "Nestle actually knew of the lack of substantiation." *Id.* at *7. Later,

3  the Ninth Circuit reversed and remanded because it found that plaintiffs'

4  "allegations regarding Juicy Juice Brain Development [supported] FAL and UCL

5  fraudulent business practice claims." *Chavez v Nestle, USA, Inc.*, 511 Fed. Appx. at

6  606-07. The plaintiffs in *Chavez* did not bring CLRA claims. *Id.*

7       Here, unlike *Chavez*, Plaintiff bases her claims on Gerber's knowing and

8  affirmative misrepresentations, not a theory of "fraudulent omission or concealment"

9  or that Gerber "had a duty to disclose that it allegedly lacked substantiation." Def.

10 Memo. at 20: 4, 14. In actuality, the Amended Complaint alleges a wide range of

11 false and misleading marketing tending to deceive or confuse the public, creating an

12 issue of fact inappropriate for dismissal as a matter of law. *See, e.g.*, ¶¶ 37("Several

13 compelling scientific studies have concluded that partially hydrolyzed whey formula

14 does not lower the risk of allergic manifestations . . . . ), 43 ("Exhibit B falsely

15 communicates to consumers that Good Start Gentle reduced the risk of infant

16 allergies despite . . . compelling evidence, such as the Lowe Study, contradicting the

17 claim."). Gerber's duty to disclose argument makes little sense given California law

18 and the substance of Plaintiff's allegations.

19 **2.    Plaintiff Alleges Reliance and Causation Under the UCL, FAL and CLRA**

20      Gerber misstates the requirements for reliance under California law,

21 alternatively arguing that Plaintiff's daughter must have manifested allergic

22 symptoms or that Plaintiff must pinpoint the exact moment and exact

23 misrepresentation that compelled her to buy Good Start Gentle. *See* Def. Memo. at

24 8, 10-11, 17-19. The reliance requirements under the California statutes forming the

25 legal basis of Plaintiff's claims for relief are more flexible than Gerber asserts.

26      Under the UCL and the FAL, a plaintiff must have "suffered an injury in fact

27 and . . . lost money or property as a result of the unfair competition." CAL. BUS. &

28

PROF. CODE §§ 17204, 17535. Under the fraud prong of the UCL and for FAL claims[6] based on misrepresentations, a plaintiff must also allege "actual reliance." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011). But actual reliance does not require that the misrepresentation was the "predominant" or "decisive" factor in a plaintiff's decision to purchase the product; instead, the misrepresentation must have only been a "substantial factor" in the decision. *Tobacco II*, 46 Cal 4th at 326-27. "A presumption, or at least an inference, of reliance arises whenever there is a showing that the misrepresentation was material."[7] *Id.* at 327.

Courts have found actual reliance in cases involving claims similar to Plaintiff's. For example, in *Bruton*, the court upheld claims under the UCL, FAL, and CLRA claims against Gerber where the plaintiff "allege[d] that she 'read and reasonably relied on' Defendants' labels, 'including labels with nutrient content claim,' when making her decision to purchase Defendants' products." *Bruton v. Gerber*, 961 F. Supp. 2d at 1089; *Gerber Probiotics*, 2014 WL 1310038, at *6 ("Causation for standing purposes is met here because Plaintiffs demonstrate that Gerber's message was consistent across its campaign, and Plaintiffs allege that they were exposed to advertisements and product labels, and that they relied upon the category of misrepresentations at issue in purchasing the product(s)"); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 530-31 (N.D. Cal. 2012) ("[I]t is likewise of marginal significance that both plaintiffs have admitted multiple reasons for their purchase of Arizona products. So long as the representation that defendants'

---

[6] Under the CLRA, consumers must allege that they suffered damages "as a result of the use or employment by any person of a method, act, or practice declared to be unlawful" pursuant to the statute. Cal. Civ. Code §§ 1770, 1780. Furthermore, a plaintiff must allege actual reliance. *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 586 (C.D. Cal. 2011).

[7] "A misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice in the transaction in question." *In re Tobacco Cases II*, 46 Cal. 4th at 327. Materiality is a question of fact, unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it:" *Id* (citation omitted).

products were 'natural' was an 'immediate' cause for their purchase, the reliance requirement is met."); *Delacruz v. Cytosports*, No. 11-3532 (Dkt. 48), 2012 WL 256387, at *9 (N.D. Cal June 28, 2012) ("She had plead that she 'saw and relied' on the alleged misrepresentations on the website in deciding to purchase the products. She also alleges that she 'saw and relied' on television ads.").

In this case, the Amended Complaint alleges that reliance on *material* misrepresentations played a "substantial" factor in Plaintiff's purchase of Gerber Good Start, namely reliance on Gerber's website and the conspicuous "1st & Only Routine Formula to Reduce the Risk of Developing Allergies" label affixed to containers of Good Start Gentle. *Id.* at ¶¶ 61-63 ("Plaintiff ceased buying other infant formulas, and instead, began routinely purchasing Good Start Gentle formula."). The fact that Plaintiff's pediatrician may have played a small role in introducing Plaintiff to Good Start Gentle and Good Start Soothe is not fatal to her case because Gerber's misleading practices still played a substantial, if not decisive, role in her decision to consistently purchase Good Start Gentle for over a year. *Id.* at 60-69, 72, 90, 100, 144, 145, 153-55 ("Plaintiff first saw and relied on the information depicted [on the "1st & Only" label] in November 2013"). Gerber, of course, can cite no authority to the contrary, and its reliance argument is a veiled attempt to prematurely raise factual issues on a motion to dismiss.

Gerber also asserts that Good Start Gentle's inside label cured the misrepresentation on its patently false "1st & Only" label, another impermissible factual argument not suitable for determination on a Rule 12(b)(6) motion." Def. Memo. at 10. As a general rule, "whether a business practice is deceptive will usually be a question of fact" rarely appropriate for dismissal on a motion to dismiss. *Williams v. Gerber Products, Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

In *Williams*, the Ninth Circuit held that a misleading representation on the front of a package is actionable even if "cured" on the back. It explained: "We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from

the ingredient list in small print on the side of the box." *Id.* at 939-40; *Morales v. Kraft Foods Group, Inc.*, 14-cv-04387, at 9-10 (C.D. Cal. October 23, 2014) (Kronstadt, J.) ("Moreover, this argument has a factual basis. Thus, it relies on what a reasonable consumer would conclude about the term 'natural,' after reading the ingredient label on the cheese."); *Yumul v. Smart Balance, Inc.* 773 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) ("The Nucoa packaging does not make it 'impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'"); *Wilson v. Frito-Lay North America, Inc.*, 12-1586 (Dkt. 46), 2013 WL 1320468, at *12-14 (N.D. Cal. April 1, 2013) ("Even though the nutrition box could resolve any ambiguity, the Court cannot conclude as a matter of law, in the context of a 12(b)(6) motion, that no reasonable consumer would be deceived by the 'Made with ALL NATURAL Ingredients' label"); .

Here, the "1st & Only" label attached to Good Start Gentle containers is bordered in gold and represents in bold lettering that the product reduces the risk of developing allergies generally. ¶ 44. As a matter of law, and under *Williams*, it cannot be said that no reasonable consumer would be deceived by such a misrepresentation, even if the product also includes a technical and equivocal disclaimer on the inside label. This is especially true because a reasonable consumer would be required to tear open an inside label – pre-purchase – to even be exposed to the disclaimer, something Plaintiff does not allege she did. Furthermore, it appears that the disclaimer – at best – relates to Gerber's atopic dermatitis claim. Def. Memo. at 10. The Amended Complaint plausibly alleges that Gerber's atopic dermatitis claim is scientifically disproven and false. ¶¶ 36-41. As such, the inside label has no curative effect and only exacerbates the deception and confusion of a reasonable consumer.

### 3. Plaintiff Alleges Damages and "Injury in Fact" under the UCL, FAL and CLRA

Plaintiff adequately alleges damages under California law and standing under

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Article III of the United States Constitution, despite Gerber's argument otherwise. *See* Def. Memo. at 18-19. Litigants filing suit under the UCL and FAL must "demonstrate some form of economic injury." *Kwikset Corp. v. The Superior Court*, 51 Cal. 4th 310, 323 (Cal. 2011). Plaintiffs can allege economic injury in "innumerable" ways, including by alleging that they paid more in a transaction than they otherwise would have absent the challenged unfair business practice. *Id.*

In *Kwikset*, the Supreme Court of California found that plaintiffs demonstrated actionable economic harm by alleging they overpaid for or would not have purchased products falsely labeled as being manufactured in the United States. *Id.* at 329-30. Many other courts have also found injury-in-fact where the plaintiff alleged they would not have purchased a product absent misleading business practices. *See, e.g.*, *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d at 1088 ("Bruton has adequately alleged injury-in-fact – namely, by claiming that she paid for products that she would not otherwise have purchased[.]"); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1218 (C.D. Cal. 2012) ("The harm was not that the product was somehow inferiorly made, but simply that the consumer would not have purchased it at the price he paid, but for the misrepresentations."); *Jones v. ConAgra Foods, Inc.* 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (Allegation that "plaintiffs would not have purchased a product if the product had been labeled accurately is sufficient to establish injury under California's consumer laws.").

Gerber argues, without support, that Plaintiff must show that she paid less for competitor brand infant formulas than she did for Good Start Gentle. Def. Memo at 19. As shown above, California law does not require Plaintiff to do so. Instead, all Plaintiff must allege is that she would have paid less for Good Start Gentle or not bought the product at all had Gerber not engaged in the unlawful conduct charged in the Amended Complaint, an allegation she makes numerous times, in non-conclusory fashion. ¶¶ 8, 68, 91, 102 ("Had Defendant not made false and misleading statements and used false and misleading advertising tactics, Plaintiff . . .

- 17 -

1    would have paid less than what [she] did for Good Start Gentle, or would not have

2    purchased the product at all.").

3          Standing under Article III of the United States Constitution is conferred

4    though allegations of economic injury. In order to have standing under Article III, a

5    plaintiff must have suffered an injury in fact, a relatively low threshold met by a

6    "specific, identifiable trifle" of damage. *Kwikset*, 51 Cal. 4th at 322-4 (citations

7    omitted); *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932

8    (9th Cir. 2008). Indeed, "lost money or property – economic injury – is itself a

9    classic form of injury in fact." *Kwikset*, 51 Cal. 4th at 324; *Gerber Probiotics*, 2013

10   WL 451994, at *5 ("Plaintiffs correctly argue that '[m]onetary harm is a classic form

11   of injury in fact.'"). Here, Plaintiff alleges that she would not have purchased "Good

12   Start Gentle had she known" about Gerber's misleading business practices, a clear

13   economic injury, and one establishing Article III Standing. [8] Am. Compl. at ¶ 68, 90,

14   100, 145, 154-55 ("Plaintiff . . . lost money as a direct and proximate result of

15   Defendant's unlawful business practices.").

16   **E.    PLAINTIFF HAS PROPERLY ALLEGED A BREACH OF EXPRESS**

17   **WARRANTY CLAIM.**

18         "In order to establish an express warranty, a plaintiff must demonstrate that

19   defendant's statements of fact or opinion were the basis of the agreement of the

20   parties." *McKinniss v. General Mills, Inc.*, 07-cv-2521 (Dkt. 25), 2007 WL 4762172,

21   at *5 (C.D. Cal. Sept. 18, 2007); *Gerber Probiotic*, 2014 WL 1310038, at *11

22   (Under similar New Jersey law, plaintiffs pleaded a breach of express warranty

23   claim where they alleged "the terms of the contract included the promises and

24   affirmations of fact related to the Products' purported immunity-related health

25   benefits and near-equivalence to breastmilk.") (modifications omitted). The

26   Amended Complaint likewise alleges a statement of fact by Defendant—"Good Start

27

28

[8] Standing requirements under the UCL, FAL, and CLRA are identical. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013.)

- 18 -

1  Gentle was FDA approved to reduce the risk of allergies in infants and that Good

2  Start Gentle did in fact reduce the risk of allergies in infants." ¶¶ 127, 44-50. The

3  Amended Complaint further alleges "That promise and related promises became part

4  of the basis of the bargain between the parties and thus constituted an express

5  warranty." ¶ 127.

6      Contrary to Defendant's claim that "Plaintiff has not adequately plead a

7  breach," the Amended Complaint states "Defendant breached the express warranty

8  in that the goods were in fact not FDA approved, did not comply with the FDA's

9  limited qualified health claim language requirements, and do not reduce the risk of

10 allergies in infants." ¶ 129. Moreover, the Amended Complaint alleges that "[a]s a

11 result of this breach, Plaintiff and the Class in fact did not receive goods as

12 warranted by Defendant." *Id.*

13     Defendant next insists the Amended Complaint does not plead Plaintiff's

14 reliance. Def. Memo of Law at 21: 19-21. This argument disregards the paragraphs

15 in the Amended Complaint that specifically plead reliance in considerable detail. *See*

16 ¶ 63 ("Plaintiff first saw and relied on the information depicted [on the "1st & Only"

17 label] in November 2013."); ¶ 61 ("In October 2013 and November 2013, Plaintiff

18 researched Good Start formula and reviewed statements made by Defendant on its

19 website highlighting Good Start Gentle's endorsement by the FDA and its ability to

20 protect infants from developing allergies."); ¶ 62 ("Based on this false and

21 misleading information, Plaintiff ceased buying other infant formulas, and instead,

22 began routinely purchasing Good Start Gentle formula."); ¶ 67 ("Plaintiff made

23 those purchases based on Gerber's false and misleading promotional materials and

24 labeling that Gerber Good Start Gentle was approved by the FDA to reduce the risk

25 of infants developing allergies …."); ¶ 72( Plaintiff "was exposed to Defendant's

26 deceptive advertising and business practices and purchased Good Start Gentle in

27 reliance thereon."); ¶¶144, 153 ("Plaintiff … saw, believed, and reasonably relied on

28 Defendant's advertising, labeling and packaging when purchasing Good Start

1   Gentle.").

2       In any event, California law does not require specific reliance to state a claim

3   for breach of express warranty. *See* CAL. COM. CODE § 2313. In *Weinstat v. Dentsply*

4   *Intern., Inc.*, 180 Cal. App. 4th 1213 (Cal. Ct. App. 2010), the Court of Appeals of

5   California stated that "breach of express warranty arises in the context of contract

6   formation in which reliance plays no role." *Id.* at 1227. This Court has likewise held

7   that "[p]roof of reliance on specific promises or representations is not required" to

8   show that an express warranty has been breached. *In re ConAgra Foods, Inc.*, -- F.

9   Supp. 3d --, 2015 WL 102756, at *35 (C.D. Cal. Feb. 23, 2015) (collecting cases).

10      Thus, although Plaintiff has properly alleged reliance on Gerber's

11  misrepresentations, to sustain the claim for breach of express warranty, such a

12  showing is not necessary.

13      Finally, Defendant makes the untenable claim that Plaintiff does not allege

14  "how she was damaged." Def. Memo. of Law at 22:17. This argument totally

15  ignores the paragraphs in the Amended Complaint that allege how Plaintiff was

16  damaged by Defendant's conduct. *See* ¶ 68 ("Plaintiff would not have purchased

17  Gerber Good Start Gentle had she known (1) that partially hydrolyzed whey protein

18  does not reduce the risk of allergies (including atopic dermatitis) in children or (2)

19  that the FDA did not endorse, approve, or certify the health claims Defendant made

20  on its labels, in its advertisements, and on its website."); ¶ 102 ("Plaintiff and the

21  Class were denied the benefit of the bargain when they decided to purchase Good

22  Start Gentle over competitor products which are less expensive, contain healthier

23  ingredients, do not purport to be endorsed by the FDA for quality, make medically

24  and scientifically supported health claims, or which do not make health claims

25  linking the consumption of partially hydrolyzed whey protein and a reduced risk of

26  food allergies in infants. Had Defendant not engaged in its false and misleading

27  advertising tactics, Plaintiff and the Class would have paid less than what they did

28  for Good Start Gentle, or not purchased the product at all."). In sum, Plaintiff has

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    sufficiently alleged a warranty, its breach, reliance (although not necessary under

2    California law), and damages.

3    **F.    PLAINTIFF HAS PROPERLY ALLEGED A BREACH OF IMPLIED**

4    **WARRANTY CLAIM**

5         Gerber conveniently truncates the law with respect to the definition of

6    "merchantability" for purposes of pleading an implied warranty claim. Gerber

7    bizarrely posits that Plaintiff cannot prevail on the implied warranty claim because

8    there are no allegations that Plaintiff "attempted to resell her containers of Good

9    Start or that she ever intended to resell them when they [sic] purchased them." (Def.

10   Memo., 23:25-27.). However, the law does not require these allegations for an

11   implied warranty claim.

12        Merchantability is not limited to a requirement that a product conform to its

13   ordinary and intended use. "Merchantability has several meanings [including] the

14   product must '*conform to the promises or affirmations of fact made on the container*

15   *or label*.'" *Hauter v. Zogarts*, 14 Cal.3d 104, 117-118 (1975) (emphasis added)

16   (implied warranty existed since product "does not live up to the statement on the

17   carton that it is 'Completely Safe Ball Will Not Hit Player.'"); *In Re Ferrero*

18   *Litigation*, 794 F. Supp. 2d 1007, 1118 (S.D. Cal 2011) (Following *Hauter*, the court

19   declined to dismiss Plaintiffs' claim for implied merchantability in a case involving

20   Nutella spread.); *Augustine v. Natrol Products, Inc.*, 13-cv-3219 (Dkt.), 2014 WL

21   2506284, at *5 (S.D. Cal. May 15, 2014) ("Plaintiff's claim invokes a different

22   meaning of 'merchantability,' which requires that the product 'conform to the

23   promises or affirmations of fact made on the container.'").

24        The Amended Complaint alleges that Defendant made representations to

25   Plaintiff and the Class, "by its advertising, packaging, labeling … that Good Start

26   Gentle was FDA approved to reduce the risk of allergies in infants and that Good

27   Start Gentle did in fact reduce the risk of allergies in infants." ¶ 133. The Amended

28   Complaint contains additional allegations regarding Defendant's labeling of Good

Start Gentle. *See, e.g.*, ¶ 62 ("Plaintiff purchased Good Start Gentle infant formula in various containers, including containers with the misleading label: '1st & Only Routine Formula to Reduce Risk of Developing Allergies'"); ¶ 64 ("Plaintiff also purchased Good Start Gentle misbranded containers that mischaracterized the relationship between '100% whey partially hydrolyzed' and a reduced risk of atopic dermatitis . . . "); ¶67 ("Plaintiff made those purchases based on Gerber's false and misleading promotional materials and labeling that Gerber Good Start Gentle was approved by the FDA to reduce the risk of infants developing allergies, even though Defendant knew that such claims were baseless and rejected by the FDA.").

The Amended Complaint further alleges that "Defendant breached the implied warranty of merchantability when it sold Plaintiff and the Class infant formula that … did not conform to the promises or affirmations of fact made on the container or label." ¶ 135.

Moreover, Gerber's one sentence assertion that privity of contract is necessary for breach of an implied warranty ignores precedent, beginning with a California Supreme Court decision over seventy-five years ago, holding that an implied warranty runs to the ultimate purchaser of food products in the absence of privity. *See, e.g.*, *Klein v. Duchess Sandwich Co.*, 14 Cal. 2d 272, 284 (1939) ("the warranty as to the fitness of foodstuffs intended for human consumption was not intended to be solely for the benefit of the immediate 'buyer,' but was intended to be for the benefit of the ultimate consumer,—the existence of privity of contract not being essential in an action brought by such consumer on the warranty theory"); *Gottsdanker v. Cutter* Laboratories, 182 Cal.App.2d 602, 607 (1960) (California "holds that the implied warranties run with food products to the ultimate consumer"); *Mexicali Rose v. Superior Court*, 1 Cal. 4th 617, 621 (1992) (*Klein* held that "warranty of fitness should apply to a 'manufacturer' of foodstuffs, notwithstanding the fact that a retailer may have sold the goods to the consumer"); *Windham at Carmel Mountain Beach Assn. v. Superior Court*, 109 Cal. App. 4th

1162, 1169 (2003) ("Exceptions to the privity requirement have been established in cases involving foodstuffs, drugs and pesticides"); *Baker v. Bayer Healthcare Pharmaceuticals, Inc.*, 13-cv-490 (Dkt. 29), 2013 WL 6698653. at *6 (N.D. Cal. Dec. 19, 2013) ("California recognizes an exception to the privity requirement in breach of warranty claims pertaining to food or drug products….This exception allows an implied warranty to run from the manufacturer to the ultimate consumer.").

    *Blanco v. Baxter Healthcare Corp*., 158 Cal. App. 4th 1039 (2008), the sole case relied upon by Defendant, is easily distinguishable because (1) it was a medical device case, (2) it did not involve the recognized food exception to the privity requirement, and (3) it relied solely on *All West Electronics, Inc. v. M-B-W, Inc.*, 64 Cal.App.4th 717 (1998) for the proposition that "[t]he general rule is that privity of contract is required in an action for breach of … implied warranty." *Blanco*, 158 Cal.App.4th at 1058-1059. *All West Electronics*—a case involving a concrete paver machine—held that the general rule applied "because this case does not come under any recognized exception to this general rule."  *All West Electronics*, 64 Cal.App.4th at 726-727. This case, however, involves foodstuffs – an infant formula.

    Thus, under well-established precedent, Plaintiff has properly pleaded an implied warranty claim, and privity between Plaintiff and Defendant is not required.

## G.    PLAINTIFF HAS PROPERLY ALLEGED CLAIMS FOR NEGLIGENT AND INTENTIONAL MISREPRESENTATION

    Plaintiff states a claim for intentional misrepresentation because she alleges all elements with particularity. In California, the elements of intentional misrepresentation are "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e.

- 23 -

1   induce reliance; (4) justifiable reliance; and (5) resulting damage." *Cortina v. Goya*

2   *Foods, Inc.*, 14-cv-169 (Dkt. 42), 2015 WL 1411336, at *14 (S.D. Cal. Mar. 19,

3   2015) (Plaintiff stated claim for intentional misrepresentation where defendant

4   omitted material fact in the sale of beverages.); *Allen v. ConAgra Food, Inc.*, 13-cv-

5   1279 (Dkt. 41), 2013 WL 4737421, at *10 (N.D. Cal. Sept. 23, 2013) (Plaintiff

6   adequately alleged intentional misrepresentation where defendant misrepresented

7   that its cooking spray contained "zero fat").

8        In this case, like *Goya Foods, Inc.*, Plaintiff states a claim for intentional

9   misrepresentation by alleging (1) that Gerber "falsely advertised Good Start Gentle

10  as the first only infant formula endorsed by the FDA to reduce the occurrence of

11  allergies in infants," ¶ 7, (2) that Gerber funded scientific research and had dealings

12  with the FDA which gave it actual knowledge its claims were false and misleading,

13  ¶¶ 28-29, 34-35, 36-41, (3) that despite this knowledge Gerber undertook its actions

14  to induce purchases and outpace its competitors,  ¶¶ 7, 42-52, (4) that Plaintiff

15  justifiably relied on these falsehoods by purchasing the product after reading the

16  product label and Gerber's website,  ¶¶ 61-69, and (5) that Plaintiff suffered

17  damages because she "would not have purchased Good Start Gentle" had she been

18  aware of the truth.  ¶ 68.

19       Moreover, the economic loss rule does not bar Plaintiff's claim for negligent

20  misrepresentation because negligent misrepresentation sounds in fraud or deceit, not

21  negligence or strict liability.[9] *Barrier Specialty Roofing & Coatings, Inc. v. ICI*

22  *Paint North America, Inc.*, 07-cv-1614 (Dkt. 35), 2008 WL 2724876, *5-6 (E.D.

23  Cal. July 11, 2008). In *Barrier,* the court rejected the same argument that Gerber

24  makes here about the economic loss doctrine but found that "negligent

25

26  _____

27  [9] The elements of negligent misrepresentation are: "(1) misrepresentation of a past or material fact,
    without reasonable ground for believing it to be true, and (2) with intent to induce another's

28  reliance on the fact misrepresented: (3) ignorance of the truth and justifiable reliance on the
    misrepresentation by the party to whom it was directed; and (4) resulting damage." *Pirozzi,* 966 F.
    Supp. 2d at 924.

- 24 -

misrepresentation is not subject to negligence defenses, including the economic loss rule" because "physical injury" is not a necessary element of a negligent misrepresentation claim. *Id.* Even in the case Gerber relies upon, *Williamson v. Reinalt-Thomas Corp.*, 11-cv-03548 (Dkt. 44), 2012 WL 1438812 at *13-15 (N.D. Cal. Apr. 25, 2012), the court grouped negligent misrepresentation with plaintiff's claim for fraud (Counts 6 and 7) and only applied the economic loss rule to his claim for negligence (Count 8).

Indeed, courts have allowed similar negligent misrepresentation claims to survive a motion to dismiss. *Goya Foods, Inc.*, 2015 WL 1411336, at *14 (Plaintiff pleaded that Goya had no "reasonable ground" to believe its statements regarding its beverages were true."); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 924 (N.D. Cal. 2013) (sustaining negligent misrepresentation claim against Apple where the plaintiff alleged that Apple stated that customers' private information was secure "without reasonable ground for believing it to be true.").

Here, like *Apple* and *Goya*, Plaintiff's claim for negligent misrepresentation is properly pleaded because she alleges facts demonstrating that Gerber's assertion that Good Start Gentle prevented allergies was made without reasonable ground for believing it to be true, including that Gerber ignored scientific research and clear instruction from the FDA. ¶¶ 21-42, 142.

## V.    CONCLUSION

For the reasons discussed above, the Court should deny Gerber's motion.

DATED:  April 20, 2015                    **KELLER, FISHBACK & JACKSON LLP**


                                          By:  _/s/     Dan C. Bolton_____
                                              Dan C. Bolton (SBN 104236)


                                          Attorneys for Plaintiff and the Proposed Class